UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN D. FRAZIER,

                Plaintiff,         Civil Action No. 20-10321
                                        Magistrate Judge David R. Grand

v.

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16) AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**I.    Background**

Plaintiff Jonathan D. Frazier ("Frazier") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") in which administrative law judge Martha M. Gasparovich ("ALJ") found that, beginning March 1, 2017, Frazier was not disabled and therefore was no longer entitled to disability benefits under Title II of the Social Security Act (the "Act").

Frazier's case has an unusual background. In 2012, he got into an argument with family members that turned violent. Frazier was charged with a series of crimes, including home invasion, use of a dangerous weapon, and intent to do great bodily harm. However, he was found not guilty by reason of insanity ("NGRI"). He was then hospitalized and diagnosed with schizophrenia. His application for disability insurance benefits ("DIB") was approved on January 29, 2013, though he did not immediately receive benefits due to his hospitalization which was considered custodial. (ECF No. 12-4, PageID.124.)

In mid-January 2015, Frazier was released from the hospital and allowed to live at home, though he was still under Court supervision pursuant to an Authorized Leave Status ("ALS") Contract. (Tr. 257.) In addition to his ongoing treatment with physicians, this included a requirement that Frazier submit to weekly "eyes on" administration of medication and to mental health evaluations. To his credit, Frazier did very well under this supervision. He stopped using non-prescribed drugs, made his appointments, and had an active personal life which included getting married, going on a honeymoon, welcoming the birth of his second child, caring for his children at home, volunteering with Big Brothers, and performing some work both in and out of the house.[1] Frazier's improvement was also consistently reflected in the medical records. As discussed below, the records routinely reflect normal examinations and cognition, and self-reports from Frazier that he was doing well.

Notwithstanding the improvement Frazier appeared to be making, Jessica Bright, M.D. signed a Clinical Certificate on November 9, 2016, indicating that she had examined Frazier for 15 minutes and was recommending that he be re-hospitalized. (Tr. 263-64.) However, Dr. Bright indicated that hospitalization was needed due to Frazier's purported "inability to understand need for treatment" (Tr. 264), whereas Dr. Bright's own notes reflect the opposite. For example, Dr. Bright noted the following at her short meeting with Frazier: "[u]nderstands signs of illness;" "[r]ecognizes need for ongoing treatment;" and "[h]as constructive plans for future." (Tr. 266.) Also on November 9, 2016, Daniel Ing, who is a Court Services Liaison with the Washtenaw County Probate Court (Tr. 971), indicated that he was recommending that Frazier be hospitalized for one year because Frazier was likely to discontinue treatment after the ALS Contract term

---

[1] Frazier's work outside the house is mitigated to some extent by the fact that he consistently maintained not feeling comfortable around others and that some of the work was for his wife's food truck business.

2

expired. (Tr. 261-62.)

Nothing in the record suggests that the recommendation for hospitalization was granted. Indeed, as discussed in detail below, all of the records show that Frazier remained living in the community, was compliant with his ALS Contract obligations, and achieved the goals set for him. (Tr. 928 (May 2018 treatment note indicating that Frazier "successfully sustained mental health recovery . . . and followed requirements of his ALS contract."); 979 ("Mr. Frazier was last hospitalized 2/2012."))

On February 23, 2017, a Social Security Administration doctor reviewed Frazier's medical records and prepared a detailed report regarding his functional limitations. (Tr. 72-81.) The doctor found Frazier not significantly limited in most of the relevant domains, including, among others, his ability to: carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; and sustain an ordinary routine without special supervision. (Tr. 80.)[2] On March 1, 2017, a disability adjudicator found that Frazier would be able to work with certain limitations, and therefore determined that his disability benefits should cease. (Tr. 81.)

The Social Security Administration wrote to Frazier on March 1, 2017, to advise him that based on a review of reports from Washtenaw County Community Mental Health and the Kalamazoo Regional Psychiatric Hospital, it determined he was "now able to work" and that his "benefits will stop." (Tr. 92-94.) Frazier's request for reconsideration was denied. He then had a hearing before a hearing officer, . (Tr. 101-127.) She questioned Frazier about his past and present condition, as reflected in her handwritten notes. The hearing officer prepared a thorough written

---

[2] Although the doctor found Frazier did not have any significant social interaction limitations, the residual functional capacity ultimately adopted by the ALJ does include such limitations.

evaluation of the record evidence, including Frazier's statements from the hearing. (Tr. 101-127.) She properly noted that the hearing's focus was to evaluate whether Frazier's impairments had sufficiently improved since he had been determined to be disabled – the comparative point decision ("CPD") – such that he could perform work.

In addition to discussing the disability determination decision and prior medical records, the hearing officer noted Frazier's testimony that he: was taking his medication and felt better; had done some work at his wife's food truck business; provides care for his son; goes for walks; drives a car; shops; makes meals; does not use marijuana any longer; gets along well with his immediate and extended family; goes to movies and football games; volunteers with Big Brothers; sold cars; and had not gotten into any verbal or physical altercations since being released from the hospital. The hearing officer also noted that Frazier described his mood as "calm," "laid back," and "excellent." Ultimately, the hearing officer concluded that Frazier's impairments had "significantly improved as it relates to his ability to perform work related tasks," that he could perform a full range of unskilled work, and that he therefore was not disabled.

Frazier then requested a hearing before an ALJ. An initial hearing was held before ALJ Gasparovich on August 27, 2018. Frazier appeared at the hearing alone, and elected to adjourn the hearing so that he could be represented by counsel. The hearing was held on December 19, 2018, with Frazier being represented by attorney Ebonie Adams. (Tr. 25-54.) Frazier testified, as did vocational expert Luanne Castellana ("VE"). On January 9, 2019, the ALJ issued her decision. (Tr. 10-18.)

The ALJ properly noted that the issue in Frazier's case was whether "his disability has ended under section 223(f) of the Social Security Act," which provides, "A recipient of benefits under this title [] based on the disability of any individual may be determined not to be entitled to

4

such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased . . ." 42 U.S.C. § 423(f). The ALJ noted that the most recent favorable medical decision finding Frazier to be disabled is the January 14, 2013 decision – the CPD – and that at the time of the CPD, Frazier had the medically determinable impairment of schizophrenia, which met Listing 12.03. The ALJ found that as of the date of the decision, Frazier had not engaged in substantial gainful activity. The ALJ found that since March 1, 2017, and through the date of the decision, Frazier had the medically determinable impairments of history of delusional disorders and paranoid schizophrenia, but that neither of those impairments or combination of impairments met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, 20 CFR §§ 404.1525, 404.1526. The ALJ found that "medical improvement" occurred on March 1, 2017, and that this medical improvement was related to Frazier's ability to work because, by March 1, 2017, his CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. The ALJ found that since March 1, 2017, Frazier had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: low stress, defined as no quick decision making and no quick judgments required on the job; no interaction with the public and only occasional interaction with coworkers and supervisors; and would be unable to perform jobs that are fast paced, high production, or require frequent changes in tasks, expectations, or locations.

The ALJ found that Frazier would be unable to perform his past relevant work. However, the ALJ found that because Frazier is a "younger individual," 20 C.F.R. § 404.1563, with at least a high school education and ability to communicate in English, "the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

5

framework supports a finding that the claimant is 'not disabled', whether or not [he] has transferable job skills." *See* Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.  Based on all of the foregoing, the ALJ concluded that, considering Frazier's age, education, work experience, and RFC, based on the impairments present since March 1, 2017, he has been able to perform a significant number of jobs in the national economy.  Therefore, the ALJ concluded that Frazier's disability ended on March 1, 2017, and that he had not become disabled again since that date.  The Appeals Council denied review of the ALJ's decision on December 6, 2019.  On February 7, 2020, Frazier timely filed a complaint in this Court for judicial review of the final decision.  (ECF No. 1.)

Both Frazier and the Commissioner moved for summary judgment.  (ECF Nos. 15, 16.)  The Court[3] held oral argument on December 3, 2020.  For the reasons stated below, the Court will grant the Commissioner's motion and deny Frazier's motion.

## II.     Applicable Legal Standards

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Under the Act, if a person is found to be disabled and awarded benefits, his entitlement to continued receipt of benefits can be terminated if it is determined that his disability "has ceased."  42 U.S.C. § 423(f).  Although for initial benefit determinations, the Commissioner's regulations provide a five-step sequential analysis that the ALJ must follow, an

---

[3] The parties have consented to the undersigned's authority to conduct all proceedings and enter a final judgment in this case.  (ECF No. 14.)

eight-step sequential analysis applies where, like here, the issue is determining whether a previously-determined disability has ceased:

> Step One: If the claimant is currently engaged in substantial gainful activity, the claimant is no longer disabled.
>
> Step Two: If the claimant has an impairment or combination of impairments which meets or medically equals one of the impairments listed in the regulations, the claimant's disability continues.
>
> Step Three: The ALJ must determine whether "medical improvement," defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled," has occurred. 20 C.F.R. 404.1594(b)(1), (f)(3). If so, the analysis proceeds to Step Four. If not, the analysis proceeds to Step Five.
>
> Step Four: The ALJ must determine whether the medical improvement is related to the claimant's ability to work.
>
> Step Five: The ALJ must determine whether any of the exceptions in paragraphs (d) and (e) of the regulation apply. If none apply, the claimant's disability continues. If one of the first group of exceptions to medical improvement applies, the ALJ must move to Step 6. If an exception from the second group of exceptions applies, the claimant is no longer disabled.
>
> Step Six: The ALJ must determine whether the claimant's current impairments, in combination, are "severe," meaning they significantly limit his ability to do basic work activities.
>
> Step Seven: The ALJ must assess the claimant's residual functional capacity based on his current impairments, and determine whether he can perform past relevant work. If the claimant can perform such work, his disability has ended.
>
> Step Eight: The ALJ must determine whether other work exists that the claimant can perform considering his residual functional capacity, age, education, and work experience. If the claimant can perform other work, his disability has ended. If the claimant cannot perform other work, his disability continues.

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner

has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or the court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must

8

be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

### III. Analysis

In his summary judgment motion, Frazier argues, "the ALJ's decision did not properly assess the medical evidence in this case which supports findings that the claimant's psychological difficulties prevent Mr. Fraizier [sic] from performing substantial gainful activities." (ECF No. 15, PageID.1055.) However, Frazier's argument is actually much more narrow, as he focuses almost exclusively on the ALJ's handling of a "Clinical Certificate" that Dr. Bright completed on August 1, 2018, for the Washtenaw County Probate Court in which she, for the second time, *see supra* at 2, recommended an unspecified period of "hospitalization" for Frazier. (Tr. 979-80.) Before addressing the specifics of the Clinical Certificate and Frazier's argument, however, it is helpful to review the ALJ's discussion of the record evidence from the relevant period.

#### *ALJ's Discussion of Medical Record*

The ALJ began by noting that although Frazier had a prior history of paranoid schizophrenia and delusional disorder,[4] he had been treating at Packard Health and Washtenaw County Community Mental Health ("WCCMH") and doing very well. The ALJ summarized the medical records leading to her well-supported conclusion that, "[o]verall, the medical records and

---

[4] At some point in the 12-month period before May 2018, Frazier's "[d]iagnosis was changed from 'Paranoid Schizophrenia' to 'Delusional Disorder' due to no longer meeting full diagnostic criteria for the former." (Tr. 927.)

9

treatment history do not support [Frazier's] allegations" of disabling mental impairments during the relevant time, *i.e.*, as of March 2017 when his disability benefits were terminated. (Tr. 15-17.) In particular, the ALJ noted:

- March 2017 records from Packard Health showed that Frazier had no complaints, presented with normal mood and affect, was active, alert, and fully oriented, and had normal memory. He was setting up his medications on his own without error and stated that he was doing well and enjoying the warmer weather. He was calm, pleasant and cooperative. At a May 2017 appointment, Frazier discussed his upcoming wedding and travel plans for a honeymoon.

- In September 2017, after Frazier returned from his honeymoon, he had a stable mood, good energy, and good concentration, and denied any psychosis and anxiety. He advised that he had a second child on the way, and was thinking of moving into a new home. His treating physician, Dr. Michelle Shauger, completed a medical source statement in November 2017 in which she opined that Frazier was able to work at his "usual occupation." In December 2017, Frazier advised that his wife had just had the baby, that he was doing well and displayed no signs of psychosis. He had a positive mood, made good eye contact and had a friendly demeanor. He believed his past symptoms were due to his use of marijuana – which he had stopped using after being released from the hospital.

- Frazier reported in February 2018 that he was doing well with a stable mood. He was sleeping well, and had good energy and good concentration. He had been doing odd jobs, but stopped after the baby was born. In March 2018, Frazier took his medications without incident. His affect was appropriate, and he denied any sleep issues. His move to the new home went well. In April 2018, he again had no issues with his medication, and showed no signs of instability. He denied any symptoms or sleep issues, and said he was not stressed. In May 2018, Frazier again had no issues with his medication. He had an appropriate affect, good mood, and was calm and pleasant. He denied any psychosis and reported good sleep, energy and concentration. He had been fixing up cars. He again reported feeling "much better" since he had stopped using marijuana.

(Tr. 15-16, 670-71, 704, 706, 736, 771, 788, 24, 840, 849, 866, 874, 878, 882, 917, 919, 939, 965.)

### *Other Record Evidence Consistent with that Discussed by the ALJ*

- Other record evidence in the record also lends support to the ALJ's decision. For example, on May 8, 2017, Frazier completed his monthly drug testing, with all negative results. (Tr. 822, see also Tr. 931 ("has passed every drug test provided . . . over last 2 years . . . going back to when client started".)) Frazier was then permitted to reduce the frequency of his "eyes on" medication distribution from twice per week to once per week. (Tr. 827.) It was agreed at that time that Frazier would "seek out self-employed construction work while continuing to work at his fiance's [sic] business, Detroit Dog Company (currently working 45-50 hours per week)." (Tr. 767; *see also* Tr. 778 (September 7, 2017 treatment note

10

stating, "now in community on ALS contract receiving eyes on meds (abilify) from ACT and doing well . . . has been allowed thru ngri to go to once weekly visits w/ ACT, given stability . . .")). In February 2018, Frazier was permitted to decrease the dosage of the Abilify he had been prescribed. (Tr. 849.) An April 2018 treatment note indicates that Frazier "has had no apparent relapses of Psychotic or Mood (Mania) symptoms" since he began with the program three years earlier. (Tr. 948.) Another April 2018 note indicates, "No known safety/behavioral issues since being treated by [WCCMH]". (Tr. 941.) Finally, in a May 1, 2018 treatment note, a WCCMH physician indicated that Frazier had "successfully sustained mental health recovery . . . and followed requirements of his ALS contract." (Tr. 928.)

### *Dr. Bright/Mr. Ing August 2018 Hospitalization Recommendations*

Despite all of the foregoing, on August 1, 2018, Dr. Bright, a psychiatrist, completed a Clinical Certificate in which she recommended that Frazier be hospitalized. (Tr. 979-80.) Dr. Bright noted that she had examined Frazier for ten minutes and checked a box indicating that he was "mentally ill" (with a diagnosis of schizophrenia) and posed a "likelihood of injury to others." (*Id.*) She therefore recommended an unspecified term of "hospitalization" for Frazier. (Tr. 980.) As with Dr. Bright's similar recommendation about 18 months earlier, there is nothing in the record to suggest that Frazier was, in fact, hospitalized. To the contrary, at the December 19, 2018 administrative hearing before the ALJ, Frazier testified that he was living at his home. (Tr. 29.)

As a basis for her determination that Frazier was mentally ill, Dr. Bright wrote, "Mr. Frazier has been diagnosed with schizophrenia, with long-standing paranoid delusions that he is being persecuted. He is adjudicated/NGRI for Home Invasion First Degree, 2 counts of Unlawful Imprisonment and Weapons Carrying with Unlawful Intent to do Great Bodily Harm Less than Murder and Habitual Offender 2nd offense. Mr. Frazier was last hospitalized 2/2012; discharge diagnosis was schizophrenia, chronic paranoid type. He is currently prescribed Abilify tablets overseen by the ACT treatment team via once per week eyes on medication." (Tr. 979.) As to why she believed Frazier posed a likelihood of injury to others, Dr. Bright wrote, "5/2012 threatened to 'kick all your asses' to IP treatment team & barricading self in room at night. 2/2011

11

seriously assaulted uncle, believing uncle conspiring to kill him, resulting in subarachnoid and subdural hemorrhages.  2007 Misdemeanor Assault charge.  2001 stabbed and beat another person." (Tr. 980.)  Finally, Dr. Bright found that Frazier posed a risk of harm to himself and/or others because he had an "inability to understand [the] need for treatment."  (*Id.*)  Yet, as to the "Facts" that supported that finding, Dr. Bright wrote only, "2017 questioning mental illness.  2012 denied mental illness."  (*Id.*)

Also on August 1, 2018, Ing completed another Petition for Continuing Mental Health Treatment Order to the Probate Court (like the one he prepared in November 2016) recommending that Frazier be ordered to participate in an additional one-year period of "combined hospitalization and alternative/assisted outpatient treatment."  (Tr. 976-77.)  However, in the section asking Ing to describe the basis for his recommendation, he indicated that it was only based on what others had told him about Frazier's conduct *from February 2012*.  (Tr. 977-78.)

### *ALJ's Discussion of August 1, 2018 Recommendations*

The ALJ gave only "limited weight" to these two recommendations, explaining that "Ing is not an acceptable medical source and his opinion is not consistent with the overall medical evidence"; "Dr. Jessica Bright is not a treater, but examined for court purposes"; and that "[t]reaters are not recommending hospitalization as she is here." (Tr. 16.)  Frazier argues that this aspect of the ALJ's decision is erroneous because (1) Dr. Bright was one of Frazier's "treating" physicians; and (2) "[t]o give the opinion of a treating psychiatrist who regularly met with Mr. Frazier no weight is not appropriate and requires this Court to look at that evidence in weighing whether Mr. Fraizier [sic] continues to establish that he is unable to engage in substantial gainful activity." (ECF No. 15, PageID.1057.)

*Discussion*

The Court begins by noting that it appears that rather than giving "no weight" to Dr. Bright's and Mr. Ing's opinions as Frazier contends, the ALJ gave them "limited weight." The ALJ wrote that she was giving "limited weight" to the "Probate Court Petition," referencing "Exhibit 12F," which encompasses both Mr. Ing's and Dr. Bright's submissions to the Probate Court. (Tr. 16.) More substantively, while Frazier plausibly argues that Dr. Bright was a "treating source," overall the argument is fairly weak, and at most constitutes harmless error by the ALJ.

The applicable regulations do not specifically define the term "treating physician," but instead provide indicia that the Court should consider, such as whether there was an "ongoing treatment relationship" where the patient saw the doctor "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1527(a)(2). The regulations also provide, "We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)." *Id.* Frazier's position is colorable if one assumes Dr. Bright's evaluations for the Probate Court were of a "frequency consistent with accepted medical practice for the type of [] evaluation required for [his] medical condition[]." However, the record seems to reflect that Frazier's *medical condition* required that he be seen much more often than Dr. Bright saw him, and that the timing of Dr. Bright's evaluations was driven not by Frazier's *medical condition*, but by *the Probate Court's oversight* of his ALS contract.[5]

---

[5] Frazier also supports his argument by noting that he identified Dr. Bright as a treating physician at his initial hearing before the ALJ. (ECF No. 15, PageID.1056.) This argument lacks merit. Frazier, unrepresented at the time, answered in the affirmative when asked whether Dr. Bright is "the only person you've been treating with?" But the voluminous record in this case demonstrates that the ALJ's assumption in this respect was clearly inaccurate. Moreover, a patient's subjective

13

Moreover, substantively, Dr. Bright's involvement seems distinguishable from the many others who actually saw Frazier on a regular, ongoing basis. Although Dr. Bright's name appears in a number of the records, most all of those are simply a copy/paste of her few prior involvements in reviewing Frazier's records. It appears that over a number of years, Dr. Bright actually met Frazier only two or three times, and two of those – when she met Frazier in connection with performing evaluations for the Probate Court – lasted only a total of 25 minutes. The ALJ reasonably could have distinguished between Dr. Bright's role and that of the other medical professionals who saw Frazier on a much more regular and frequent basis.

Even if the Court were to consider Dr. Bright a "treating source," the Court would still reject Frazier's argument. For one, substantively, Frazier's entire argument as to the ALJ's handling of Dr. Bright's recommendation is, "To give the opinion of a treating psychiatrist who regularly met with Mr. Frazier no weight is not appropriate and requires this Court to look at that evidence in weighing whether Mr. Fraizier [sic] continues to establish that he is unable to engage in substantial gainful activity." (ECF No. 15, PageID.1057.) Arguably, this assertion is so perfunctory that it fails to raise, and therefore waives, an argument about the "treating physician rule." *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotations omitted)). But even giving Frazier the benefit of the doubt on this point, the Court still finds his argument lacks merit.

"Generally, the opinions of treating physicians are given substantial, if not controlling,

---

opinion is not a factor mentioned in the regulations as a relevant consideration as to whether a "treating" relationship exists. 20 C.F.R. § 404.1527(a)(2).

14

deference," but they "are only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) and 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Accordingly, "the Sixth Circuit has held that '[a]n [ALJ] may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records.'" *Kikolski v. Comm'r of Soc. Sec.*, No. 14-cv-14700, 2016 WL 6080217, at *9 (E.D. Mich. Jan. 27, 2016) (quoting *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014)), *report and recommendation adopted*, 2016 WL 1357900, at *6 (E.D. Mich. Apr. 5, 2016).

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2) (establishing that the ALJ must "give good reasons" for the weight given to a treating source opinion)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good

15

reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 242).

Here, even if Dr. Bright is considered a "treating source," the ALJ's failure to identify her as such is harmless because Mr. Ing, as the Court Services Liaison, had advanced the same recommendation to the Probate Court, and the ALJ specifically rejected that recommendation because it "is not consistent with the overall medical evidence." (Tr. 16.) This finding by the ALJ, which Frazier does not challenge, is supported by the substantial evidence in the record discussed above. *See supra* at 10-11. By all accounts, Frazier had been doing very well over a period of years, and was ultimately found to have "successfully sustained mental health recovery . . ." (Tr. 928.) It also appears that the Probate Court rejected Dr. Bright's recommendation for hospitalization, as Frazier testified at the hearing a number of months later that he was living at his home. (Tr. 29.) The ALJ also indicated that "[t]reaters are not recommending hospitalization as [Dr. Bright] is here." (Tr. 16.) This was an accurate statement, as no persons other than Dr. Bright and Mr. Ing indicated that Frazier should be hospitalized during the relevant time. Indeed, one of Frazier's more regular treaters, Dr. Michelle Shauger, who (according to Dr. Bright) "supervis[ed] medications and case management" for Frazier, opined on November 1, 2017, that he could work at his "usual occupation" without limitations. (Tr. 264, 840.) While Frazier challenges Dr. Shauger's opinion, arguing that his "usual occupation at that time was not substantial gainful activity . . . He was assisting his wife but was plagued by fears on a regular basis," there are

16

repeated notes in the record that showed Frazier doing well both at home and at work, and expressly denying having experienced any psychological symptoms. (ECF No. 15, PageID.15; Tr. 445, 771-72, 788, 812, 827, 845, 849, 874, 877, 896, 900.) One medical record notes that at a Probate Court hearing, Frazier "testified that [his] current job is not stressful." (Tr. 790.) Another indicated his "increased employment responsibilities with his fiancée's food distribution company . . ." (Tr. 611.) And, even if Frazier was not working at a substantial gainful activity level, that does not mean the ALJ's consideration of his work was improper. *See* 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.... Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Finally, Frazier never specifies any particular aspect of the RFC determined by the ALJ that he believes is flawed, or any other restrictions he believes should have been included. To that end, the Court notes that the RFC is more restrictive than the opinion of the state agency reviewing physician, to which the ALJ gave "some weight." (Tr. 16.) Frazier does not challenge the ALJ's reliance on that opinion.

For all of the foregoing reasons, Frazier's arguments regarding the ALJ's analysis lack merit, and the ALJ's decision is supported by substantial evidence in the record.

## IV.    Conclusion

For the foregoing reasons, Frazier's Motion for Summary Judgment (**ECF No. 15**) is **DENIED**, Defendant's Motion for Summary Judgment (**ECF No. 16**) is **GRANTED**, and the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

17

| | |
|---|---|
| Dated: December 14, 2020<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 14, 2020.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
